Jerry L. Steering (SBN 122509)
Law Offices of Jerry Steering
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849
(949) 474-1883 Fax
jerrysteering@yahoo.com
Attorney for Plaintiff Joy Ho Scherer

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY HO SCHERER,<br><br>    Plaintiff,<br><br>    VS.<br><br>CITY OF LOS ANGELES, WESSSAM WAYNE ISMAIL, NELSON ANTONIO MARTINEZ, JR. and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983) CLAIM FOR VIOLATION OF RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES (U.S. CONST. AMEND 1), VIOLATION OF DUE PROCESS OF LAW (U.S. CONST. AMEND 14) and CLAIM FOR MUNICIPAL (MONELL[1]) LIABILITY<br><br>**JURY TRIAL DEMANDED** |

**COMES NOW** plaintiff Joy Ho Scherer and shows this honorable court the

---

[1] *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

COMPLAINT FOR DAMAGES

1

following:

## <u>JURISDICTIONAL ALLEGATIONS</u>

1.      As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the CITY of Los Angeles, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

## <u>GENERAL ALLEGATIONS</u>

3.      Plaintiff Joy Ho Scherer, hereinafter referred to as "plaintiff" or "plaintiff Scherer or "SCHERER" and/or "plaintiff" and/or "Joy Ho Scherer" is a natural person, who, at all times complained of in this action, resided in the State of California. Plaintiff is a professional model and actress.

4.      Defendant City of Los Angeles, hereinafter also referred to as "City of Los Angeles" or "CITY", is a political subdivision of the State of California and is a municipal entity, located within the territorial jurisdiction of this Honorable Court.

5.      Defendant Wessam Wayne Ismail, hereinafter referred to as "ISMAIL" and/or "defendant Ismail" and/or "defendant Wessam Ismail" and/or "defendant Wessam Wayne Ismail" is a Certified California Peace Officer and a sworn Los Angeles Police Department police officer, who, at all times complained of herein, was acting in the course of and within the scope of his employment with defendant City of Los Angeles.

6.      At all times complained of herein, defendant Wessam Wayne Ismail was acting an individual person under the color of state law.

7.      Defendant Nelson Antonio Martinez, Jr., hereinafter referred to as

COMPLAINT FOR DAMAGES

2

"MARTINEZ" and/or "defendant Nelson Martinez, Jr." and/or "defendant Nelson Antonio Martinez, Jr.", is a Certified California Peace Officer and a sworn Los Angeles Police Department police officer, who, at all times complained of herein, was acting in the course of and within the scope of his employment with defendant City of Los Angeles.

8.    At all times complained of herein, defendant Nelson Antonio Martinez, Jr. was acting an individual person under the color of state law.

9.    Defendant City of Los Angeles, hereinafter also referred to as "City of Los Angeles" or "CITY", is a political subdivision of the State of California and is a municipal entity, located within the territorial jurisdiction of this Honorable Court.

10.    Defendants DOES 1 through 6, inclusive, are sworn peace officers and/or police officers and/or Detectives and/or supervisors and/or investigators and/ Special Officers and/or a dispatchers and/or some other public officer, public official or employee of defendant City of Los Angeles[2], who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or are otherwise responsible for and liable to plaintiff for the acts complained of in this action, whose identities are, and remain unknown to plaintiff, who will amend her complaint to add and to show the actual names of said DOE defendants when ascertained by plaintiff.

11.    At all times complained of herein, DOES 1 through 6, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and/or police officers and/or Special Officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.)

---

[2] And/or with some other public entity.

COMPLAINT FOR DAMAGES

3

and/or dispatchers and/or public officers, employed by defendant City of Los Angeles and/or with some other public entity, and were acting in the course of and within the scope of their employment with defendant City of Los Angeles[3].

    12.    Defendants DOES 7 through 10, inclusive, are sworn peace officers and/or Supervisors and/or the City Manager or some other high ranking persons in City Management, the Chief of Police and/or Assistant Chiefs and/or Deputy Chiefs and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel (such as) and/or policy making and/or final policy making officials, employed by the City of Los Angeles[4], who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiff in this action, such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the Los Angeles Police Department / City of Los Angeles[5] for: 1) arresting both parties demanding the arrest of the other party to a domestic dispute, if both parties to the domestic dispute insist on the other party being arrested, rather than determining which party was the "primary aggressor"; 2) arresting both parties demanding the arrest of the other party to a domestic dispute, without determining whether the LAPD officer(s) had probable cause to arrest each party arrested; and 3) for failing to discipline its LAPD officers for failing to intervene during constitutional violations by fellow LAPD officers.

    13.    Plaintiffs are presently unaware of the identities of DOES 1 through

---

[3] And/or with some other public entity.
[4] And/or with some other public entity.
[5] And/or with some other public entity.

10, inclusive, and will amend his complaint to add and to show the actual names of said DOE defendants, when ascertained by plaintiff.

14.     At all times complained of herein, DOES 7 through 10, inclusive, were acting were acting as individual persons acting under the color of state law, pursuant to their authority as Police Officers and/or Supervisory Officers, Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials, employed by the City of Los Angeles and/or with some other public entity, and/or some other public official(s) with the City of Los Angeles and/or with some other public entity, and were acting in the course of and within the scope of their employment with defendant the City of Los Angeles.

15.     At all times complained of herein, defendants DOES 7 through 10, inclusive, were acting as individual persons under the color of state law; under and pursuant to their status and authority as peace officers and/or Supervisory peace officers (as described herein, above and below), and/or policy making peace officers, with defendant City of Los Angeles.

16.     In addition to the above and foregoing, defendants DOES 1 through 6, inclusive, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiff Joy Scherer of her federal Constitutional and statutory rights, as complained of in this action, and acted in joint and concerted action to so deprive plaintiffs of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States (Constitutional and statutory) law.

17.     Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above referenced, was a proximate cause of the violation of the plaintiff Joy Scherer's federal and state constitutional and statutory rights,

COMPLAINT FOR DAMAGES
5

as complained of herein.

### FIRST CAUSE OF ACTION
**VIOLATION OF FIRST AMENDMENT RIGHTS – RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES**
**[42 U.S.C. § 1983]**
**(By Plaintiff JOY SCHERER Against Defendants WESSSAM WAYNE ISMAIL, NELSON ANTONIO MARTINEZ, JR. and DOES 1 through 6, inclusive)**

18.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 17, inclusive, above, as if set forth in full herein.

19.    In 2020 plaintiff Joy Scherer had an ongoing dating relationship with a man named Maxwell Bravo (hereinafter referred to as "BRAVO").

20.    On October 31, 2020 plaintiff was invited by BRAVO to go out that evening to celebrate Halloween. He also invited plaintiff to stay the night with him since he lived so far away.

21.    Plaintiff took an overnight bag and her five-pound Yorkie dog, Stanley, with her to BRAVO's house.

22.    When plaintiff arrived at BRAVO's apartment there was another friend of BRAVO's there, who he introduced as "Ezra".

23.    Plaintiff and BRAVO, along with his friend Ezra, thereafter left for the evening for their Halloween celebration.

24.    They all went to a bar. BRAVO asked plaintiff what she wanted to drink and she excused herself to the restroom.

25.    When plaintiff came back to the bar area from the restroom, she saw that BRAVO was having a heated discussion with the bouncer there.

26.    The bouncer told plaintiff and Ezra that due to COVID-19 restrictions they would have to go outside to the front patio of the bar.

27.    The bouncer told BRAVO that he would have to leave by the rear door and escorted him out.

28.    A short time later plaintiff heard a car tires squealing followed by a gunshot.

29.    Plaintiff and Ezra went to the back of the bar where BRAVO had parked the car that they arrived in.

30.    The bouncer told plaintiff and Ezra that BRAVO had been told to leave the bar because he started an argument with another customer.

31.    The bouncer also told plaintiff and Ezra that BRAVO drove out of the parking lot at a high rate of speed and fired his gun up in the air while doing so.

32.    After a couple of minutes plaintiff and Ezra received a phone call from BRAVO, telling them that he would pick them up on the street adjacent to the bar. When they got into the car BRAVO was extremely angry and Ezra told him to calm down and that he could not fire his gun off.

33.    Plaintiff saw a gun in BRAVO's waistband and was very scared of him due to his angry demeanor.

34.    BRAVO entered the freeway and drove in excess of 100 mph, further scarring plaintiff and Ezra.

35.    Ezra yelled at BRAVO to slow down, or BRAVO was going to kill them[6].

36.    BRAVO drove faster and began making growling noises. When BRAVO slowed down to take the off-ramp for Ventura Blvd., Ezra was able to exit BRAVO's car, by opening the door and rolling out of the car.

_____

[6] Accidentally that is.

COMPLAINT FOR DAMAGES

7

37.     Thereafter, after arriving at BRAVO's apartment, BRAVO again became enraged, and grabbed plaintiff by the wrist and bit down on the same, violently.

38.     At this point plaintiff knew she had to get her dog and her belongings and leave BRAVO's apartment. Plaintiff was afraid for her life and did not want to further aggravate or anger BRAVO.

39.     Once BRAVO and plaintiff were both inside the BRAVO's apartment, she began gathering her things, and BRAVO asked what she was doing. Plaintiff said she was going to drive home.

40.     BRAVO yelled that no she wasn't leaving and grabbed her.

41.     Plaintiff made it into the bathroom and locked the door. She was seated on the toilet with her pants and underwear down at her feet, when BRAVO tore the door and frame from the wall and entered the bathroom.

42.     BRAVO grabbed plaintiff by her hair and began hitting her on her head.

43.     Plaintiff tried to pull up her pants but BRAVO would not let her do so, and drug her by her hair out of the bathroom, and forced her against the back of the couch.

44.     At this point BRAVO was screaming at plaintiff that she was not going to leave, and with her pants still around her ankles he unbuttoned his pants and pressed his penis against her, attempting to have sex with her.

45.     Plaintiff screamed at him to stop and he told her to "*Shut the fuck up*".

46.     When BRAVO continued to try to have sex with plaintiff she elbowed him. This made BRAVO even angrier, and he violently bit down on plaintiff's left shoulder and repeatedly punched, kicked and otherwise struck

COMPLAINT FOR DAMAGES

8

plaintiff.

47.    Plaintiff continued to fight against BRAVO's attempted rape of her, and pulled-up her pants, while BRAVO continued to beat plaintiff.

48.    BRAVO thereafter opened the front door of his apartment and pushed plaintiff outside of the apartment on the second-floor landing.

49.    Plaintiff did not have her bag, keys, or dog and was partially naked from BRAVO ripping off her clothing.

50.    Plaintiff pounded on the door, pleading with BRAVO to give her her dog and keys so she could leave.

51.    BRAVO opened the door and threw plaintiff's dog and her belongings down the flight of stairs outside of BRAVO's apartment.

52.    Plaintiff began to pick up her clothes and belongings when BRAVO again came outside of his apartment door.

53.    BRAVO grabbed plaintiff by her hair, dragging her back inside of his apartment.

54.    Plaintiff tried to flee down the stairs, but BRAVO grabbed her by her hair, dragging her back up the stairs and began beating her head against the metal railing.

55.    Plaintiff was screaming for her life, when a man yelled at BRAVO to stop beating her, and that the police were on the way. The man also called out to plaintiff that he watched BRAVO beat the plaintiff for an hour, until the police arrived.

56.    As soon as defendants LAPD police officers ISMAIL, MARTINEZ and DOES 1 to 3, inclusive, arrived at BRAVO's apartment, BRAVO ran up to said officers and had a conversation with them.

57.    Defendant LAPD police officers ISMAIL, MARTINEZ and DOES 1

COMPLAINT FOR DAMAGES

9

to 3, inclusive, then came over to plaintiff and asked her how she knew BRAVO, and what she wanted to do.

58.    Plaintiff told defendants ISMAIL, MARTINEZ and DOES 1 to 3, inclusive, that she and BRAVO had been involved in a dating relationship for a couple of years, that he just tried to rape her, and that he beat her up and falsely imprisoned for the past hour or so. Plaintiff also showed said defendants her various injuries that she told them that they were inflicted by BRAVO; injuries that were and appeared severe, and that were of such a nature that any well-trained peace officer[7] would have believed that plaintiff had been badly beaten by BRAVO (See, attached Exhibit "A"; a true and correct copy of photographs of the injuries inflicted by BRAVO upon plaintiff that said defendant police officers saw during the November 1, 2020 incident complained of in this action).

59.    While plaintiff was described these crimes perpetrated against her to defendants ISMAIL, MARTINEZ and DOES 1 to 3, inclusive, they saw obvious and notorious lacerations to plaintiff's face, head, scalp, as well as substantial bruising and a lot of blood all over her head and face area.

60.    BRAVO had no visible injuries and did not appear to be injured in any way. BRAVO simply claimed that plaintiff battered him.

61.    Plaintiff told ISMAIL, MARTINEZ and DOES 1 through 4, inclusive, that she wanted BRAVO arrested for beating her and attempting to rape her.

62.    While plaintiff was describing the crimes perpetrated against her by BRAVO to defendants ISMAIL and DOES 1 and 2, MARTINEZ and DOES 3 and 4 were writing down in said defendants' LAPD Investigative Report, false

_____

[7] Or even any reasonable adult person.

COMPLAINT FOR DAMAGES

10

statements that they attributed to plaintiff, as well as material omissions of facts that plaintiff told said defendants.

63.    For example, in their Investigative Report, defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive, they show:

> "INVESTIGATION. Officers investigation revealed no domestic violence occurred. Suspect and Victim are not involved in a dating relationship, friends only. Dual battery report taken."

64.    However, as shown above, plaintiff and BRAVO had been involved in a romantic dating relationship for approximately two years, and, plaintiff had told defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive that fact.

65.    Moreover, plaintiff told defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive was the victim of domestic violence, and it was obvious to said defendant officers, and it would have been obvious to any reasonably well trained police officer from plaintiff's serious and obvious injuries, that plaintiff had been involved in a domestic violence incident.

66.    Moreover, in their Investigative Report, defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive showed:

> "Upon arrival, my partner met with Victim- Ho[8], Joy who stated she is friends with Suspect (later identified as Bravo, Maxwell.) Ho stated that she came over to Bravo's residence and, went out drinking. Upon their return to the residence, a mutual friend of theirs who went out with them left the residence, and Maxwell asked her to leave as well. Ho stated she refused to leave, and Bravo began thrown her items out of the residence. Ho attempted to stop Bravo and a physical altercation ensued. Ho stated Bravo pushed her out of the residence and she pushed him back. Ho refused to a Private Person's Arrest."

[8] Joy Ho is Joy Scherer.

COMPLAINT FOR DAMAGES

11

67.    In fact, BRAVO didn't ask plaintiff to leave his apartment and she never refused to leave; she left on her own accord and had no desire to stay there.

68.    Moreover, plaintiff never refused to leave his apartment and she never told said defendants that she did; she left on her own accord and had no desire to stay there.

69.    In fact, plaintiff did not attempt to stop BRAVO from ejecting her and her property from his apartment, and he did not push her out of his home, and plaintiff never told said defendant police officers that any such things happened.

70.    In fact, the only physical altercation that had taken place was BRAVO attempting to rape plaintiff, and plaintiff being falsely imprisoned and beaten by BRAVO, and plaintiff told said defendants all about those crimes having been committed against her by BRAVO.

71.    Moreover, contrary to what defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive showed in their Investigation Report, plaintiff did not refuse a private person's arrest of BRAVO. Rather, she implored defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive to arrest BRAVO.

72.    Plaintiff requested of defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive, that BRAVO be arrested for his severe and obvious beating of her.

73.    In response to plaintiff requesting that defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive arrest BRAVO, defendant ISMAIL told plaintiff that if she insisted on said police officers arresting BRAVO, that defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive would also arrest her for battering BRAVO.

COMPLAINT FOR DAMAGES
12

74.    Plaintiff did not decline to effect a private person's arrest of BRAVO. Plaintiff only stopped insisting that that BRAVO be arrested for his crimes committed against her, because she was threatened with arrest for insisting on defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive arresting BRAVO.

75.    Thereafter, one of the female officers at the scene at BRAVO's home joked with plaintiff and said something to the effect: *"Girl you need medical attention";* something obviously true.

76.    At this point plaintiff was offered an ambulance to transport her to the hospital. However, plaintiff refused the services of an ambulance, believing that it would be too expensive for her.

77.    Defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive told her she could have a couple minutes to get her thing from inside of BRAVO's apartment and then she had to leave said apartment; something that she was already desirous of doing.

78.    As she entered the apartment, she pointed out the door ripped from the wall and the officer told her to just keep walking and get her stuff.

79.    Plaintiff also pointed out to defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive that BRAVO had four guns and rifles on his bed and defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive.

80.    Defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive Ismael were disinterested in the guns, even after plaintiff told them that BRAVO had been shooting his pistol off into the air while driving his car earlier that evening while leaving the bar.

81.    After plaintiff was able to get some of her belongings from

COMPLAINT FOR DAMAGES

13

BRAVO's apartment, defendant ISMAEL told her to walk past BRAVO, but not to look at him or talk to him. At that time plaintiff saw the two female officers talking with BRAVO, DOES 5 and 6, in what she described as a friendly joking manner.

82.    A male witness walked up to plaintiff while carrying her dog, and asked if the dog was hers. Plaintiff thanked him and took possession of her dog.

83.    The male witness to said beating of plaintiff was visibly upset and angry at defendants ISMAIL, MARTINEZ and DOES 1 through 4, inclusive, *"You aren't going to arrest him?"* with no response to that statement by said defendants.

84.    Plaintiff was thereafter escorted to her car by defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive, who told her to leave BRAVO's apartment scene / area.

85.    Thereafter, a friend of plaintiff, a retired police officer, learned the above and foregoing from the plaintiff, saw the plaintiff's injuries, and convinced the plaintiff to go to the Van Nuys LAPD police station to complain about BRAVO's beating and attempted rape of her on November 1, 2020, above-described.

86.    Plaintiff made an Internal Affairs Complaint and otherwise complained to criminal investigators / Detectives with the LAPD, but she was constantly put-off by them, and her complaints, both criminal and personnel complaints basically fell on deaf ears.

87.    Moreover, the LAPD Detectives who were supposedly working on the investigation of plaintiff's complaints about BRAVO, listened to the plaintiff's versions of the November 1, 2020 beating incident, but dismissed those complaints, and engaged in a coordinated effort to prevent plaintiff from being

COMPLAINT FOR DAMAGES
14

heard; from being able to convince the LAPD and the Los Angeles County
District Attorney's Office to prosecute BRAVO, including misrepresenting to the
Los Angeles County District Attorney's Office the severity of plaintiff's injuries;
telling that agency that plaintiff's injuries from his "physical altercation" with
BRAVO were *de minimis*.

88.    The LAPD Detectives who were supposedly working on the
investigation of plaintiff's complaints about BRAVO also withheld the
photographs of the plaintiff's injuries and defendants ISMAIL's, MARTINEZ'
and DOES 1 through 6, inclusive's body worn camera video recordings, from the
Los Angeles County District Attorney's Office, that would have shown that the
Deputy District Attorneys and Investigators with that agency how severe
plaintiff's injuries really were; again, all in an effort to protect BRAVO from
being prosecuted at all, and at least to make sure that if BRAVO was criminally
prosecuted, that it would not be for a felony offense.

89.    Defendants ISMAIL's, MARTINEZ' and DOES 1 through 6,
inclusive succeeded in dissuading the Los Angeles County District Attorney's
Office from filing felony domestic violence charges against BRAVO: 1) by
withholding the LAPD / said defendants' body worn camera video recordings of
the November 1, 2020 incident complained of from the Los Angeles County
District Attorney's Office[9], 2) by withholding the photographs of the plaintiff's
injuries that she suffered during the November 1, 2020 incident from the District
Attorney's Office[10], 3) by continuing to misrepresent plaintiff's statements to said

---

[9] That would have shown the severity of the plaintiff's injuries.
[10] That plaintiff had forwarded to the Los Angeles County Sheriff's Department for delivery to
the Los Angeles County District Attorney's Office from that agency.

COMPLAINT FOR DAMAGES
15

defendant LAPD Officers about the nature of the plaintiff's relationship with
BRAVO (dating relationship), and 4) by withholding plaintiff's medical records
from the Los Angeles County District Attorney's Office that were provided to said
defendant LAPD Officers to provide to the District Attorney's Office.

90.     Upon plaintiff learning that the Los Angeles County District
Attorney's Office refused to file felony criminal charges against BRAVO,
plaintiff hired a private lawyer to attempt to change their minds, and to file felony
domestic violence criminal charges against BRAVO in Los Angeles County
Superior Court.

91.     Those efforts by plaintiff's lawyer were unsuccessful, in large part
due to defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive,
refusing to provide the photographs of the plaintiff's injuries and their body worn
camera video recordings of the November 1, 2020 beating incident complained of
to the District Attorney's Office, as those body worn camera video recordings
would not only have shown the severity of the injuries inflicted upon the plaintiff
by BRAVO, but would have also shown that those injuries were fresh and
bleeding at the time that said defendant LAPD officers were at BRAVO's
apartment scene during said November 1, 2020 incident.

92.     After the Los Angeles County District Attorney's Office rejected
plaintiff's proposed criminal complaints about BRAVO for felony filing, she was
finally able to convince the Los Angeles City Attorney's Office to file
misdemeanor criminal charges against BRAVO for violation of Cal. Penal Code
§§ 273.5(a) (misdemeanor corporal injury to person with whom has dating
relationship), 245(a)(4) (misdemeanor assault by means resulting in great bodily
injury) and 242 / 243(d) (battery and battery causing great bodily injury); said
misdemeanor charges being filed against BRAVO on January 13, 2021.

COMPLAINT FOR DAMAGES

16

93.    On May 14, 2021, BRAVO pleaded No Contest to violation of Cal. Penal Code § 273.5(a) (misdemeanor corporal injury to person with whom has dating relationship) and has been ordered to pay plaintiff restitution for the economic injuries caused by him, including her medical bills.

94.    The actions of defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive, interfered with plaintiff's right under the First Amendment to the United States Constitution to petition the government for redress of grievances, to wit; her right to request of said defendants to arrest BRAVO for the crimes perpetrated against her, above-referenced.

95.    As a proximate result of the actions of defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive, plaintiff suffered mental and emotional pain and suffering and the physical manifestation of the same[11], attorney's fees, medical and psychological bills, lost wages / profits, and other general and special damages in an amount in excess of $10,000,000.00.

96.    In addition, the actions of defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive, were done maliciously and oppressively, entitling plaintiff to an award of punitive damages against said defendants, save defendant City of Los Angeles in an amount in excess of $10,000,000.00.

**SECOND CAUSE OF ACTION**
**VIOLATION OF RIGHT TO SUBSTANTIVE DUE PROCESS OF LAW**
**[42 U.S.C. § 1983]**
**(By Plaintiff JOY SCHERER Against Defendants WESSSAM WAYNE ISMAIL, NELSON ANTONIO MARTINEZ, JR. and DOES 1 through 6, inclusive)**

---

[11] Psychosomatically induced actual physical injuries.

COMPLAINT FOR DAMAGES

17

97.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 96, inclusive, as though set forth in full herein.

98.     The actions of defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive, were done maliciously and oppressively, and constituted outrageous government conduct; conduct shocking to the conscience.

99.     Accordingly, defendants ISMAIL's, MARTINEZ' and DOES 1 through 6, inclusive's action constituted a violation of substantive due process of law, in violation of plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

100.    In addition to the above and foregoing, because plaintiff has no adequate remedy under California state law to sue defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive, for their threats to plaintiff to arrest her if she insisted on BRAVO being arrested by said defendants for his beating, attempted rape and false imprisonment of her, said actions of said defendants also constitute a violation of substantive due process of law under the Fourteenth Amendment to the United States Constitution.

## THIRD CAUSE OF ACTION
### MUNICIPAL / MONELL[12] LIABILITY FOR VIOLATION OF FIRST AMENDMENT RIGHTS – RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES
### [42 U.S.C. § 1983]
### (By Plaintiff JOY SCHERER Against Defendants City of Los Angeles and DOES 7 through 10, inclusive)

---

[12] *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

COMPLAINT FOR DAMAGES

18

101.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 96, inclusive, as though set forth in full herein.

102.   As set forth above, defendants DOES 7 through 10, inclusive, are sworn peace officers and/or Supervisors and/or the City Manager or some other high ranking persons in City Management, the Chief of Police and/or Assistant Chiefs and/or Deputy Chiefs and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel (such as) and/or policy making and/or final policy making officials, employed by the City of Los Angeles[13], who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiff in this action, such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the Los Angeles Police Department / City of Los Angeles[14] for: 1) arresting both parties demanding the arrest of the other party to a domestic dispute, if both parties to the domestic dispute insist on the other party being arrested, rather than determining which party was the "primary aggressor"; 2) arresting both parties demanding the arrest of the other party to a domestic dispute, without determining whether the LAPD officer(s) had probable cause to arrest each party arrested; and 3) for failing to discipline its LAPD officers for failing to intervene during constitutional violations by fellow LAPD officers.

---

[13] And/or with some other public entity.
[14] And/or with some other public entity.

COMPLAINT FOR DAMAGES

19

103.    Pursuant to said policies and/or practices and/or customs and/or usages of the Los Angeles Police Department, described above, defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive, threatened plaintiff with arrest for battering BRAVO if she insisted on said defendants arresting BRAVO.

104.    Accordingly, the policies and/or practices and/or customs and/or usages of the Los Angeles Police Department, described above, were a proximate cause of the violation of the plaintiff's right to petition the government for redress of grievances guaranteed to her under the First Amendment to the United States Constitution; to wit; the right to make a complaint to the police of criminal conduct by another person in which they were the victim of that criminal conduct by that other person.

105.    As a result of the actions of defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive, that were caused by defendant City of Los Angeles as described above, plaintiff 95. As a proximate result of the actions of defendants ISMAIL, MARTINEZ and DOES 1 through 6, inclusive, plaintiff suffered mental and emotional pain and suffering and the physical manifestation of the same[15], attorney's fees, medical and psychological bills, lost wages / profits, and other general and special damages in an amount in excess of $10,000,000.00.

**WHEREFORE**, plaintiff Joy Ho Scherer prays for judgment as follows:

a)  For judgment against all defendants for compensatory damages in an amount in excess of $10,000,000.00;

---

[15] Psychosomatically induced actual physical injuries.

COMPLAINT FOR DAMAGES

20

b) For judgment against all defendants, save defendant City of Los Angeles, for punitive / exemplary damages in an amount in excess of $10,000,000.00;

c) For reasonable attorney's fees and other costs of suit;

d) For a Trial by Jury, and

e) For other and further relief as this Honorable Court deems just and equitable.

_____
JERRY L. STEERING, ATTORNEY FOR
PLAINTIFF JOY HO SCHERER

COMPLAINT FOR DAMAGES
21

1
2
3
4
5
6
7
8
9
10
# Exhibit "A"
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Exhibit A - 1





Exhibit A - 3



