JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-01931-JVS(ADSx) | Date | May 10, 2023 |
| Title | Joy Ho Scherer v. City of L.A., et al. | | |

| | |
|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |

| | |
|---|---|
| Elsa Vargas | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Motion to Strike [21] and Motion to Dismiss [11, 20]**

Defendants City of Los Angeles ("City"), Wessam Ismail ("Officer Ismail"), and Nelson Martinez ("Officer Martinez") (collectively "Defendants") move to dismiss the First Amended Complaint ("FAC"), (FAC, Dkt. No. 17), in its entirety. (Mot., Dkt. No. 20.) Furthermore, Defendants move to strike portions of the FAC. (Mot. to Strike, Dkt. No. 21.) Plaintiff Joy Ho Scherer ("Scherer") opposed both motions. (Opp'n, Dkt. No. 29.) Defendants replied. (Reply, Dkt. No. 30.)

The Court issued its Tentative Order on April 7, 2023, and vacated the April 10, 2023 hearing but allowed either party to request a hearing. (See Dkt. No. 36.) Scherer requested a hearing, (Dkt. No. 33), which the Court granted. (Dkt. No. 36.) Scherer also physically lodged the video recording of the October 31, 2020 incident, (Dkt. No. 34), and prepared a transcript of the same, (Ex. A, Dkt. No. 35.) The parties appeared for oral argument on May 8, 2023. This Order reflects Court's final order on the instant motion.

The Court first **DENIES** the Defendants' Motion to Dismiss Plaintiff's Complaint, (Dkt. No. 11), as moot. Plaintiff previously filed a First Amended Complaint. (Dkt. No. 17.) The Court **DENIES** the motion to strike, (Dkt. No. 21), and **GRANTS** the motion to dismiss the First Amended Complaint (Dkt. No. 20.)

## I. Background

Scherer, a victim of an attempted rape and brutal beatings, alleges that LAPD officers manipulated her into not pressing charges against her perpetrator. The following

allegations are taken from Scherer's FAC and are assumed to be true.

*A. Factual Allegations*

On October 31, 2020, Scherer was brutally beaten during an attempted rape by a man, Maxwell Bravo ("Bravo"), with whom she was in an ongoing "dating relationship." (FAC ¶¶ 19, 44–47, 71.) Scherer fought back during the attempted rape and beatings, which took place inside Bravo's apartment that was on the second floor. (Id. ¶ 47.) Eventually, Bravo pushed Scherer outside his apartment, where she was left partially naked from Bravo having ripped off her clothing. (Id. ¶¶ 47–48.) She was left without any of her belongings. (See id.) Bravo then opened the door, threw her belongings at her, and then dragged Scherer back inside by her hair while she was screaming for her life. (Id. ¶¶ 51–55.) She tried to flee down the stairs, but he again grabbed her by her hair, dragged her up the stairs, and "began beating her head against the metal railing." (Id. ¶ 53.) A witness then yelled at Bravo to stop beating her and said that the police were on their way. (Id. ¶ 55.)

When Officers Martinez and Ismail arrived, they initially could not get inside the gate that surrounded the apartment building. (Id. ¶ 58.) But Scherer's screams could still be heard at this time. (Id.) Once the officers were able to enter the gate, which took approximately 40 seconds, they saw Bravo quickly walking towards the exterior stairway leading up towards his apartment.[1] (Id. ¶ 59.) Scherer was located at the landing next to the stairway leading down to the first floor. (Id. ¶ 60.) Bravo was detained near the bottom of the stairs. (Id. ¶ 60.) The officers proceed towards the top, where Scherer was standing. (Id. ¶ 61.)

Scherer was obviously beaten, bloody, injured, and crying. (Id. ¶ 64.) She had observable wounds, including a bloody hematoma / laceration on her scalp area, a bloody laceration on the right side of her forehead, bite marks on both of her exposed shoulders, facial bruising, and body bruising. (Id. ¶ 71; see Ex. A, id.) On the other hand, Bravo possibly had a "tiny scratch under his chin." (Id. ¶ 77.)

---

[1] Based on her allegations, it can be inferred that at some point during the 40 seconds, Bravo descended down the stairs and walked towards the gate.

The officers then proceeded to investigate the incident. Officer Martinez and another unidentified officer ascended the stairs and questioned Scherer, while Officer Ismail questioned Bravo below. (See id. ¶¶ 67, 69.) Officer Martinez and the other officer asked Scherer if Bravo was her boyfriend. (Id. ¶ 69.) She responded, “No,” and told them that Bravo was only her friend. (Id.) The officers observed Scherer’s wounds, told her that she was “cut up and bruised up,” she was “really beat up,” and she “really needed an ambulance.” (Id. ¶ 70.) The officers asked her how she received her injuries. (Id. ¶ 72.) She explained that Bravo “tried to rape her” and when he was unsuccessful, he threw her items outside his apartment, hit her ten to fifteen times in the face, and “beat the fuck out of [her].” (Id. ¶¶ 72–73.) The officers asked her a second time whether she had any “romantic ties” to Bravo, to which she responded “Yeah, over the years” but that they were not presently “dating.” (Id. ¶ 73.)

They descended the stairs to question Bravo about the parties’ relationship status. (Id. ¶ 76.) Officers Ismail, Martinez, and others observed that Bravo had no visible injuries except for the scratch. (Id. ¶ 77.) Bravo told officers Martinez and Ismail that he had been “dating” for four months but then changed his answer and said they were “dating” for about a year. (Id. ¶ 79.) When Officer Ismail asked Bravo about “dating” Scherer, he clarified that they “were not now dating.” (Id. ¶ 80.)

Officer Martinez walked back up towards Scherer and asked her if she wanted to “press charges” against Bravo, and she answered “yes.” (Id. ¶ 81.) Officer Martinez then went back to question Bravo. (Id. ¶ 82.) Bravo denied hitting Scherer—even though she was obviously bleeding and bruised—and stated that he did not want to press charges. (Id. ¶¶ 82–86.) Officer Martinez seemed to doubt his statement, stating “Dude, she’s pretty beat up.” (See id. ¶ 85.) Bravo told the officers that Scherer hit him with “flailing arms” and accused her of antagonizing him. (See id. ¶ 82.)

Officer Martinez told Bravo that because there was no “dating relationship,” the incident merely involved a battery. (Id. ¶ 86.) Then, Officer Martinez returned to Scherer and told her:

> Just like you, he has injuries too, and he’s claiming that you were the aggressor, and that you started the fight, and that just like I told you that you have the right to do a private person’s arrest, that he has that right too. **So if he wants to press**

**charges, you will be going to jail too**.

(Id. ¶ 87 (emphasis added).) But Officer Martinez deliberately did not tell Scherer that Bravo already confirmed that he would not press charges. (Id. ¶ 91.) He omitted this fact in an effort to convince her to "not to exercise her right to complain to the police to have Bravo arrested and jailed for beating her up." (Id.)

Scherer responded that she did not want to go "right now," but Officer Martinez "told [her] that she would be going to jail right now." (Id. ¶ 88.) She alleges that Officer Martinez "essentially convinced" her that if she chose to press charges against Bravo, they would both go to jail. (Id. ¶ 90.) It is not clear whether Scherer ultimately decided to "press charges," but eventually Bravo was criminally convicted for domestic violence under Cal. Penal Code § 273.5.[2] (Id. ¶ 99.)

*B. Procedural Background*

Scherer filed her complaint on October 21, 2022. (Dkt. No. 1.) On November 21, 2022, Defendants filed a motion to dismiss. (Dkt. No. 11.) The parties stipulated to continuing the hearing and permitting Scherer to file an amended complaint. (See Dkt. Nos. 15, 16.) Accordingly, on January 13, 2023, Scherer filed the First Amended Complaint. (FAC, Dkt. No. 17.) It asserts three causes of action: (1) violation of First Amendment right to petition government for redress of grievances, under 43 U.S.C. § 1983, against Ismail, Martinez, and DOES 1 through 6; (2) violation of right to substantive due process of law, under 42 U.S.C. § 1983, against Ismail, Martinez, and DOES 1 through 6; and (3) municipal liability for violation of First Amendment right to petition government for redress of grievances, under 42 U.S.C. § 1983 and Monell, against the City. (Id.)

Defendants filed the instant motions on January 30, 2023. (Dkt. Nos. 20–21.)

## II. Legal Standard

*A. Motion to Strike*

[2] People v. Maxwell Bravo, No. LAV1VW01547-01.

Under Rule 12(f), a party may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). A motion to strike is appropriate when a defense is insufficient as a matter of law. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982). The grounds for a motion to strike must appear on the face of the pleading under attack, or from matters of which the Court may take judicial notice. SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).

The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). "As a general proposition, motions to strike are regarded with disfavor because [they] are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." Sands, 902 F. Supp. at 1165–66 (alteration in original) (internal quotation marks omitted).

Therefore, courts frequently require the moving party to demonstrate prejudice "before granting the requested relief, and 'ultimately whether to grant a motion to strike falls on the sound discretion of the district court.'" Greenwich Ins. Co. v. Rodgers, 729 F. Supp. 2d 1158, 1162 (C.D. Cal. 2010) (quoting Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)).

*B. Motion to Dismiss*

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court

"'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III. Discussion

### *A. Motion to Strike*

Defendants' motion to strike is without merit. Defendants seek to strike nearly all paragraphs in Scherer's complaint that reference the physical injuries she suffered or the relationship she had with Bravo. (Mot. 3.) These allegations provide context for the officers' responses and actions, which Scherer contends were unlawful. Defendants are not entitled to cleanse and editorialize Scherer's allegations in a light most favorable to them. And they identify no prejudice they would suffer as a result of retaining these allegations. The motion is DENIED.

### *B. Motion to Dismiss*

#### 1. (Claim 1) First Amendment Right to Petition the Government

The First Amendment of the United States Constitution guarantees a "right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. It is applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. L.F. v. Lake Wash. Sch. Dist. #414, 947 F.3d 621, 626 (9th Cir. 2020). Plaintiffs may seek civil damages under 42 U.S.C. § 1983 against local governments for violations of their First Amendment rights. Nieves v. Bartlett, 139 S. Ct. 1715, 1721 (2019); see also Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972).

Individuals have a right to be free from retaliation for engaging in protected First Amendment activity. Nieves, 139 S. Ct. at 1721. To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) she was engaged in a "constitutionally

protected activity," (2) the defendant's actions would "chill a person of ordinary firmness from continuing to engage in the protected activity," and (3) the protected activity was a "substantial or motivating factor"[3] in the defendant's conduct." Capp v. Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016)).

At the outset, the Court rejects Defendants' complaint that Scherer is raising a "new" cause of action "not alleged in the FAC." (Reply 2.) This form-over-substance argument has little merit. Scherer was not required to use the word "retaliate" in her pleadings. She has alleged that "[a]lthough Officer MARTINEZ had the right to have not arrested BRAVO, he did not have the right to have threatened plaintiff with being arrested if she insisted that he do so; a violation of her right to petition the government for grievances under the First Amendment to the United States Constitution." (FAC ¶ 97.) This adequately provides Defendants with sufficient notice of her First Amendment claim.

i. **Whether Scherer's Request to "Press Charges" Constitutes a "Petition"**

The First Amendment is triggered by a "petition" to the government for the "resolution of legal disputes," whether those petitions relate to a matter of public or private concern. Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 387, 394 (2011).

Scherer has not specified what the petitioning conduct is. She alleges that Officer Martinez convinced her that if she "pressed charges," she would go to jail along with Bravo. (FAC ¶ 90.) But she also argues that the protected petitioning activity is the "continuation" of "pressing charges" against Bravo. (See Opp'n 14.) Based on the foregoing, it is unclear whether Scherer is alleging that she has exercised her right to petition when she answered "Yes" to Officer Martinez's question asking her if she

[3] Courts have described this element in various ways, but in essence, a plaintiff is required to establish a causal connection between "a defendant's animus and a plaintiff's injury." Nieves, 139 S. Ct. at 1722. A plaintiff must "show that an official acted with a retaliatory motive" and that "the motive . . . cause[d] the injury." Id. (emphasis removed). At a minimum, the retaliatory intent must be a "but-for" cause, meaning that the defendant would not have taken the adverse action against the plaintiff "absent the retaliatory motive." Id.

wanted to "press charges" or whether she argues that her right to petition extends further.

Regardless, Scherer's right to petition does not include the right to have law enforcement arrest Bravo or take some action on her behalf. The right to petition does not impose any affirmative obligation on the government to a particular course of action in response to a grievance. See Smith v. Arkansas State Highway Emp., Loc. 1315, 441 U.S. 463, 465 (1979); Brown v. Villaraigosa, No. CV 06-4169, 2010 WL 11483802, at *12 (N.D. Cal. 2010). In Brown, the government's total lack of response to a plaintiff's numerous, unsuccessful attempts to lodge a formal complaint against officers for their excessive use of force did not violate his right to petition. Id. at *4–5, 12–13. Nothing "impeded his ability to seek redress," even though his petition was met with utter silence. See id. at *12. Likewise, nothing impeded Scherer from requesting the officers to take some legal recourse, such as executing an arrest, initiating an investigation, or "pressing charges."

Scherer was entitled to petition for grievance, not to the redress of her grievance. Thus, it would seem that she exercised that right when she informed Officer Martinez she wanted to "press charges." If that is Scherer's claim,[4] then the next relevant inquiry is whether Officer Martinez's made a "threat" to her in a way that "would chill" such protected activity.

Assuming that Scherer argues that she petitioned the government by answering "Yes" to Officer Martinez's question, the Court sees no reason why it should not find that her verbal request constitutes protected petitioning activity. A petition "conveys the special concerns of its author to the government and, in its usual form, *requests action by the government to address those concerns*." Borough of Duryea v. Guarnieri, 564 U.S. 379, 388–89 (2011) (emphasis added). And a "petition" can take many forms. Borough of Duryea v. Guarnieri, 564 U.S. 379, 393 (2011) ("[T]he right to petition is not limited to petitions lodged under formal procedures."); White v. Lee, 227 F.3d 1214, 1227 (9th Cir. 2000) (recognizing that the right is exercised when a plaintiff attends and speaks at a zoning hearing); Mack v. Loretto, 839 F.3d 286, 297 (3d Cir. 2016) (recognizing that the right to petition "embraces a broad range of communications"); Pearson v. Welborn, 471 F.3d 732, 741 (7th Cir. 2006) ("Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a

[4] Neither party disputed this or otherwise addressed this at oral argument.

specific form."); Holzemer v. City of Memphis, 621 F.3d 512, 519 (6th Cir. 2010) ("[There is] no constitutional distinction between an oral and written petition for redress . . . .").

Furthermore, reporting a crime to police is protected under the First Amendment, at least as recognized by California courts.[5] In Chabak v. Monroy, 154 Cal. App. 4th 1502, 1512 (2007),[6] a female student's reports to authorities that she was being sexually abused constituted protected petitioning activity. Similarly, in Comstock v. Aber, 212 Cal. App. 4th 931, 942 (2012), a plaintiff's "complain[t] to the police" that defendant had sexually assaulted her was protected activity under her right to petition or free speech.

Defendants' briefings assume that Scherer's "petition" encompasses the right to "compel the police to 'press charges'" or "to have him prosecuted." (Reply 3.) They do not address whether her verbal response to Officer Martinez's question constitutes a petition.[7] However, even assuming that Scherer invoked her right to petition, her claim fails for other reasons.

### ii. Whether Officer Martinez's Actions Would "Chill" a Person's First Amendment Right to Request Law Enforcement to "Press Charges"

Assuming that Scherer has established that she engaged in constitutionally protected activity, she must establish that Officer Martinez's actions would have a chilling effect.

---

[5] (See Opp'n 14.) She also cites one Ninth Circuit decision, but this case is inapposite. Forro Precision, Inc. v. IBM, 673 F.2d 1045, 1060 (9th Cir. 1982) addressed a narrow issue of whether the Noerr-Pennington doctrine, which immunizes private parties from anti-competitive conduct taken to petition for government action, applied to communications made to police.

[6] In California, a cause of action arising from the right of petition under the U.S. Constitution or the California Constitution is subject to a special motion to strike commonly referred to as an anti-SLAPP motion. See Cal. Civ. Proc. Code § 425.16. A court first determines whether there is a protected activity arising under the U.S. Constitution or the state constitution. Id. § 425.16(e).

[7] Nor did they address this at oral argument.

Under this requirement, a plaintiff must show that a person of "ordinary firmness" would be deterred—or "chilled"—from further engaging in the protected activity. Capp, 940 F.3d at 1053. This is an objective inquiry. Id. An "unconstitutional chill" may "only exist if the government action has injured the individual or places the individual in immediate danger of sustaining a direct injury." O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996). Threats of arrest have such chilling effect. See, e.g., Houston v. Hill, 482 U.S. 451, 459 n.7 (1987).

Scherer cannot plausibly establish that Officer Martinez's actions would objectively chill a person of ordinary firmness from asking law enforcement to "press charges." Officer Martinez told Scherer that if *Bravo* chose to press charges, she would also be arrested. (FAC ¶ 87 ("So if he wants to press charges, you will be going to jail too.") He did not tell her that if *she* chose to press charges, she would be arrested. While Scherer might have believed these statements to be interchangeable, they are not. Indeed, it does not matter whether his statements "actually chilled" Scherer. Capp, 940 F.3d at 1054. At oral argument, Scherer urged the Court to consider the cadence of Officer Martinez's statements as depicted in the videotape to argue that his statements objectively chilled her right to petition. Additionally, she argued that his follow-up statement, "No, you're going to go," (see Dkt. No. 35, at 16), meant that if she chose to continue with a private person's arrest, she would also be imprisoned. But that statement was made in reference to his explanation of "how private persons arrest works." (Id. at 16.) And he subsequently represented multiple times that both parties had the "right to press charges." (See id. at 16–17.)

Unfortunately, Scherer's arguments are unavailing. The Court agrees that Officer Martinez probably did not have any objective basis to tell Scherer that there was a possibility that charges would be brought against her; he already knew that Bravo did not want to press charges. But the officer's subjective intent is not the relevant inquiry. See Capp, 940 F.3d at 1053. Ultimately, Officer Martinez's conditional statement could not have had a chilling effect on her right to petition. He conveyed that if Bravo chose to go forward with pressing charges against her, she would face the same consequences. This was neither an explicit nor implicit threat. Whether Officer Martinez utterly failed to discourage a dual arrest as provided under California law[8] or whether he was being

[8] California Penal Code § 13701(b) mandates that law enforcement agencies "shall" implement "written policies and standards" that "**discourage**, when appropriate, but not prohibit, dual arrests" in

intentionally disingenuous, it is not plausible under the objective standard that the "average person" would be deterred from seeking assistance from police by his statement. Id. at 1055.

Whether or not Scherer's right to petition was triggered in this instance, her claim fails because she cannot establish that Officer Martinez's actions had a "chilling effect." The Court **GRANTS** the motion. While, generally, parties are allowed to amend their pleadings, Fed. R. Civ. P. 15(a)(2); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990), leave to amend may be denied where amendment "would be an exercise in futility, or where the amended complaint would also be subject to dismissal." Steckman v. Hart Brewing, 143 F.3d 1293, 1298 (9th Cir. 1998) (internal citations omitted). This is such a case. Because Scherer's claim fails as a matter of law, the Court finds that leave to amend would be futile.

2. (Claim 2) Substantive Due Process Under the Fourteenth Amendment

Scherer alleges that her substantive due process rights under the Fourteenth Amendment of the Constitution were violated when Officer Martinez threatened to arrest her if she insisted on pressing charges against Bravo and when the other officers, including Officer Ismail and Officers Does 1–3 failed to intervene and stop said threats. (FAC ¶ 105.)

To state a substantive due process claim under 42 U.S.C. § 1983, there must be a deprivation of a constitutionally protected life, liberty, or property interest recognized by the Fourteenth Amendment's Due Process Clause. Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 523 (9th Cir. 1994). Substantive due process "forbids the government

---

domestic violence incidents. Cal. Penal Code § 13701(b) (emphasis added). California law imposes an affirmative duty on peace officers to "make reasonable efforts to identify the dominant aggressor in any incident. . . [who] is the person to be the **most significant, rather than the first,** aggressor." Id.

Scherer contends that Officer Martinez failed to abide by such policy because he incorrectly determined that the matter was not a domestic dispute and therefore failed entirely to determine who was the most significant aggressor. Whether his legal conclusion that the parties were not in a "dating relationship" was erroneous does not alter the analysis under the second prong of her First Amendment claim here. The Court bases its "unconstitutional chilling" analysis on the statements that were made to Scherer, irrespective of why the officer made those statements.

from depriving a person of life, liberty, or property" in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." Nunez v. City of L.A., 147 F.3d 867, 871 (9th Cir. 1998).

While neither party has addressed the issue, the Court finds that Scherer has failed to meet the threshold requirement of asserting a cognizable liberty or property interest. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003); Sampson v. Cnty. of L.A., 974 F.3d 1012, 1018 (9th Cir. 2020). If a plaintiff's claim brought under section 1983 "can be analyzed under an explicit textual source of rights in the Constitution, a court should not resort to the more subjective standard of substantive due process." Hufford v. McEnaney, 249 F.3d 1142, 1151 (9th Cir. 2001) (internal quotation omitted); see also Corales v. Bennett, 567 F.3d 554, 568–69 n.11 (9th Cir. 2009).

Here, Scherer's substantive due process claim is essentially duplicative of her First Amendment claim. See Brandenburg v. Hous. Auth. of Irvine, 253 F.3d 891, 900 (6th Cir. 2001) (upholding a court's dismissal of the substantive due process claim based on the First Amendment retaliation claim because the plaintiff failed to identify "any other fundamental rights"). She has not asserted whether the officers' conduct violated other fundamental rights or liberty interests. For example, she has not alleged that the officers detained her, arrested her, or otherwise impeded her liberty interests (or any other protected interest) as a result of the exercise of her First Amendment rights. In fact, Scherer has pled that she was not arrested; she was only threatened with the prospect of an arrest. (FAC ¶ 105.) Her factual allegations are identical to those underlying her First Amendment claim, which subsumes this claim.

The Court **GRANTS** the motion without leave to amend. Steckman, 143 F.3d at 1298. If Scherer wishes to pursue this claim, she may do so only upon a motion for leave to amend within fourteen days, explaining what liberty or property interest is at stake.

3. Qualified Immunity

Because the Court finds that Scherer has failed to establish a violation of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-01931-JVS(ADSx) | Date | May 10, 2023 |
|---|---|---|---|
| Title | Joy Ho Scherer v. City of L.A., et al. | | |

constitutional right, the Court need not address qualified immunity as an alternative basis for dismissing her claim. Furthermore, Scherer has failed to address qualified immunity in its entirety.

4. (Claim 3) Monell Liability Under § 1983

Scherer claims that the City's unconstitutional policies caused the violation of her right to petition the government for redress of grievances under the First Amendment. (FAC ¶ 112.)

A local government may be liable under 42 U.S.C. § 1983 for constitutional torts committed by its officials "according to municipal policy, practice, or custom." Monell v. Dep't of Social Servs. of N.Y., 436 U.S. 658, 690–91 (1978); Weiner v. San Diego Cnty., 210 F.3d 1025, 1028 (9th Cir. 2000). To impose municipal liability under § 1983, a plaintiff must show: "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (alterations and internal quotation marks omitted); see also City of Canton v. Harris, 489 U.S. 378, 388–89 (1989).

Fatal to Scherer's claim is her inability to establish a violation of her constitutional rights. Because the Court has found that she cannot plausibly state a claim under the Petition Clause of the First Amendment, Scherer's Monell claim likewise fails. See City of L.A. v. Heller, 475 U.S. 796, 799 (1986).

The Court **GRANTS** the motion and dismisses this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to dismiss.

**IT IS SO ORDERED.**